Good morning, may it please the court. My name is Glenna Carey and I'm here on behalf of Mr. Devoe. Mr. Devoe was convicted of one count of possession of cocaine with intent to distribute. At trial, the sole issue was who did the cocaine belong to. That was the completeness of the defense. It was it Ms. Erb's, was it Mr. Wilson's, or was it Mr. Devoe's. Mr. Devoe did not contest the existence of cocaine, that there was six ounces, that it was found in a duffel bag, that it was his duffel bag, or that it was some other substance. The only defense was who had knowledge of it, who constructively possessed it. And so with that we analyzed the three evidentiary rulings that I have raised in this appeal. The first is the 404B evidence and the government was allowed to evidence that 16 and a half months after this incident, Mr. Devoe was found in a in a house where there was drug paraphernalia. I submit this is pure propensity evidence. It fails two of the four criteria for allowing 404B evidence. It was supposed to prove a material point in issue, and as I just explained the only material point in issue was the the knowledge of this cocaine in this duffel bag. But then doesn't it go to that, doesn't it sort of, your defense in this case or the the issue in this case is whether or not somebody else put the cocaine in his bag. Correct. You know I'm not somebody who distributes or possesses cocaine, somebody else must have put it in my bag. And a year and a few months later he's arrested in somewhat similar circumstances, in a place where there's there's some drugs, not a lot, there's some residue, but there's paraphernalia and other things. And doesn't that make it less likely that in the first instance it was just a mistake somebody else stuck it in his bag? No, I would submit, no, first of all he wasn't arrested at the second encounter. He was he was found. He was found. And he wasn't charged with it. He wasn't charged with anything there, but he was present. But no I would submit that no it doesn't, for one, it's it's 16 and a half months after the fact. And so what was going on at the time of this incident, 16 and a half months later, doesn't shed any any light. It's true that later occurring events can be admitted, but they it's not like the Lozano case where something that happens ahead of time, it puts knowledge in the defendant's mind. Here what happens after the knowledge. Yeah, no, but it's not knowledge so much as I take it the argument here is really much more along the lines of mistake. He mistakenly thought I was the person who possessed them the cocaine the first time. So doesn't it, doesn't it, I mean, how relevant it is is a separate issue. But doesn't it have some relevance with respect to his guilty knowledge? I don't think he presented a defense of mistake. No, but they can, the government can defend against a mistake. In other words, the argument is you, it's a mistake, you got the wrong guy. It wasn't my, wasn't my cocaine. And the government says, well, it's more likely than it was in the absence of this evidence that it was because you're a guy we found in the presence of cocaine later on down the road. I'm would submit, no, that it, for the absence of mistake, it's like the defense of mistake has to be clearly presented. And I submit that it wasn't a mistake that was, that was the defense, that he committed a mistake in the government's theory that it belonged to him. I think it is, this incident 16 and a half months later shows nothing about what was going on in Mr. DeVos head at that time and who, it doesn't, like why this cocaine is found in his duffel bag is not an issue that the government thoroughly counteracted. I mean, it's, you know, there were other possible people that could have possessed this cocaine and that defense was presented, but it wasn't, this evidence does not, does not counteract that. Could you just clarify for me at the, I believe it was the Gillomway, is that the second, the subsequent location? Yes. When they found him there, they found him in a bedroom, right? Correct. And did they find any of the drug paraphernalia in this particular bedroom? I believe. What did they find there? They found some residue. They found cocaine residue, right? There's a lot of marijuana, paraphernalia, I think. And where, where was that particular, was that on a desk or was it in a duffel bag? No, there was no duffel bag in the second. It was a CD case, wasn't it? It was a CD case with a razor blade on it. On a counter or a desk or something? I believe so. It wasn't clear. There was his clothing, I think, in the other bedroom. It's, it's, you know, he wasn't charged with anything there, so they couldn't really tie him to what, what it was that they found. As I read, I'm looking at SCR, I think it's 140. They found in the bedroom, a CD case with a razor blade on it in the bedroom in which he was found. And then on that razor blade there was cocaine residue. And then the other drug related stuff was found in other parts of the house. Is that right? Yes. I mean, I'm trying to still understand your response to Judge Hurwitz. I mean, it seems like it shows knowledge. I mean, he shows that he's familiar with drugs and cocaine. Well, he didn't contest that he's not familiar with drugs and with cocaine. The issue is this, this duffel bag where other people could have put it into. He's not saying, I don't know what cocaine is. At the first residence? Correct. Correct. So it's a, it's a very limited defense saying, I'm not saying this isn't even an intent to distribute a level. This is cocaine. You found cocaine in my bag. My defense is very limited. These other two people were the ones that constructively possessed it. But he's, is he denying that the cocaine they found at the Gillom Way was his? Yeah. He, he wasn't charged with anything. He made no admissions. He was and they didn't charge him with anything on Gillom Way. Correct. Okay. So the fact that he had cocaine residue in his bedroom on the CD case, would that not tend to show that he was someone who was involved with cocaine, that that could be an inference? Well, I think it's a propensity argument. He was in, around people. There was no, it wasn't clear that this was his bedroom, but he was found in it, but there wasn't even a bed in the room. So there is an inference that he was around people that were involved with drugs. That is a given, but that his possession is not there. I would like to move on to two other pieces of evidence, the hybrid testimony. The court, the USV Freeman case makes clear that the district court is supposed to engage in vigilant gatekeeping regarding expert and lay testimony. Otherwise the officers are given unmerited credibility and that's exactly what happened here. The court... If the credibility, if the, if the hybrid testimony in this case, as I understood it, dealt with the, the, the recipient part of the hybrid testimony dealt with the Gillom Way search, correct? Correct. Was that really contested at all? In other words, he wasn't charged with it and the facts, he doesn't really contest that he was found in a room with these things, does he? He doesn't contest that, but he contests the admissibility of that. Right, but that's a separate issue. In this case, the failure to instruct as to the hybrid nature of the testimony really hurt your client at all because even if the, even if the officer was viewed credible with respect to the recipient part, that part wasn't really contested. I think it wasn't contested at trial. I mean, I think I'm contesting now that he was given undue credibility by... Undue credibility with respect to what he found at the Gillom residence? Well, sure. That's my question. What was found there, I think, was not contested, is it? Correct. Correct. They found the CD with the... Right. With the residue on it. Right. We're not saying they didn't find that. Right. They found it. Correct. So even if the officer was given undue credibility on that because nobody, nobody separated his opinion from the facts, what difference would it have made in this case? Well, I think when you tie it in then with his overall testimony, the, you know, where he ended up saying that we seized these items because that's what a drug dealer has. So he's basically allowed to give his opinion. Mr. DeVoe is a drug dealer. And, you know... But the opinion part... He didn't say that, he just said this is consistent with someone. Well, he and the other officer, I submit, went over the bounds. The other officer Moore stated that we didn't test this for fingerprinting, which was the big defense, is that these aren't fingerprints, so we don't know who they are. We didn't do this because we knew who they were. We knew who they belonged to. So he's, you know, their credibility is enhanced. And Officer Moore wasn't an expert. He was a lay witness. But he, but lay witnesses also can't testify as to the ultimate issue and it is to, you know, he overstepped his bounds of what he should have been allowed to. So those three evidentiary issues combined together, I submit, were prejudicial, highly prejudicial to Mr. DeVoe's trial. Okay. I'll give you a minute. Thank you. Thank you. Good morning, Your Honors. May it be so. My name is Timothy Edmonds and I represent the United States in this case. Since the court was just discussing a moment ago, the issue of knowledge, I think, is certainly addressed by the 404B evidence presented here. The defendant obviously claims two criteria that the 404B evidence fails under. One would be the remoteness, and we didn't talk too much about that before, but the first being failure to prove a material point. And I think the fact that 16 months after the defendant is found next to a bag with cocaine, he's found in a house with not just the cocaine residue on the CD case, but also indicia of drug trafficking and specifically cocaine trafficking. You'll recall that they found a nisetol powder there, which is specifically used for cocaine cutting, as the testimony revealed. So that's specifically related to the fact that he had knowledge of that cocaine, or intended to prove that he had knowledge of that cocaine, in the bag next to him at the Wood River Drive search in 2012. And courts have spoken to this on a number of occasions. You look to Merminesh, and Merminesh, the court specifically says, and I'll find that quote for you, I think it's relevant here. Sorry. We have consistently held that the evidence of a defendant's prior possession or sale of narcotics is relevant under 404B to issues of intent, knowledge, motive, opportunity, absence of mistake, or accident in prosecutions for possession of, importation of, and intent to distribute narcotics. And I think that really goes to the heart of the issue. Lozano echoes the same idea. So it goes to show that he may have knowledge of what is cocaine, but does it go to show that he knew, that he therefore knew, that cocaine in his duffel bag at the first residence? I believe so. That he knew that that was his cocaine, or that it was his cocaine. Other inferences could be drawn, but I believe it tends to prove that. I mean someone could, a jury could hear that and draw a different conclusion, but ultimately I think it tends to prove that. And I think that's what Merminesh and Lozano are getting at. When you're discovered around drug trafficking items or in possession of drugs, trafficking drugs, that has a specific bearing on whether or not, in another instance where you're found near drugs, you may have knowledge or have intent to distribute those drugs. And so in that instance I think, I think this is sort of explicit, or specifically what the courts are contemplating when they talk for evidence in the drug context. If we take the defendant's position, he said, well I was in a room with some cocaine residue that just showed people I was around had cocaine. Doesn't show, never prove that it was my cocaine. So that comes in to show that what is more incriminating in the first incident that's being tried, for which he's being tried, where the cocaine was actually in I put it there, but what is the fact that I'm in a room somewhere else 16 months later with cocaine in the facility to show about my, it's not even connected there to me. And I think if that was the extent of the record, I may tend to agree with you. That wasn't, in my view, the extent of the record. I think what we see is testimony that he was found in a room. First of all, the testimony was that he resided at this location, the Gillom Way location one, that he was, his clothes were in a bag and a camera found with pictures of him, I believe maybe even at that residence. In that room, in a drawer, they find a CD case with cocaine residue and a blade. Then in another bedroom, they find sort of a drug dealer's toolkit, for lack of a better term, a nice tall powder for cutting cocaine, rubber bands, baggies, sort of all the fixings with respect to drug trafficking, and also a letter indicating that he had written and he signed. So it connected him specifically, not only to the residence, but to that room specifically. Now, if it just had been he was found in a room where cocaine was found elsewhere, well then maybe that would be too far, but he is very specifically connected to this residence and in fact to the room. But not apparently sufficiently enough for him to get arrested and charged with a crime on the second occasion. In that instance? Yeah, I mean it's just, this is a comment and you may not have to respond to it, but the difficulty with 404B evidence is in many cases how unnecessary it is. Here we have a defendant caught with a lot of I didn't know it was there, and we're here arguing about a conviction because we have 404B evidence or 16 months later. It's just, I'm not, it's not just not so clear to me why this 404B evidence was needed. It may meet the prerequisites of being admissible, but I'm not so sure why in a case like this it ought to be in it. But I say that as a comment not in asking for a response. I'm happy to offer a thought. Sure. I think that in any case where you have to prove intent, the intent of someone, it's a difficult thing to prove. Intent is always proven by circumstances. Have you ever seen anybody acquitted where the cocaine was found in his bag with his clothes and he said, it wasn't mine, somebody must have stuck it there. It's the sort of I think it's just that sort of the element of proving intent. I understand and I didn't, I said in advance I didn't need a response. It's just, it's a frustrating part of review of these cases in some instances. And I understand. I think in some instances it was invited here because the defense was, I didn't know the cocaine was in my bag or someone else ran into the room in the 20 seconds officers were knocking on the door. And also to be fair to the government, the defense also said, why didn't you fingerprint the bag? And there were other tests you could have done. So I understand that it's sort of, now you've got to come back and respond to it. She raised a couple of other issues. Could you deal with the hybrid? Because our cases seem to suggest that the district court has, even in the absence of a request, has a sua sponte duty to say, this part of what the officer's saying is his opinion. And this part is what he contends are the facts. And don't confuse the two and don't give him any special credence on the facts just because he's an expert. That didn't happen here. Well, in the brief, we took the position that that was an error. I'm going to throw another idea out because I'd been thinking. Stick with your first one for a second and tell me if it was an error or why it's not reversible. Well, I believe that as we conceded it is error, but it isn't reversible because it didn't affect the substantial rights. And I think our case aligns pretty clearly with the Tarabo-Mendia case, wherein the other precautions the court set out that we need to take. So we need to bifurcate the testimony, for instance. You should bifurcate the testimony. You should not allow the witness to speculate or testify to hearsay. And obviously the cautionary instruction, which did not happen. And one other cautionary, an adequate foundation, you're supposed to lay an adequate foundation for your testimony. Tarabo-Mendia, all those things happened. There was no cautionary instruction and there was other evidence apart from the problematic testimony or the contested testimony. And as a result, the court said, yes, there was error in the lack of instruction, but ultimately it should not be reversed because everything else here was fine. Our case is the same way. There was bifurcation of the testimony. In fact, I think it was Supplemental Excerpt from Record 250. Counsel says, let's switch gears. So he transitions from the expert testimony into the into the precipiate witness testimony. But it turned out not to be a complete transition as the testimony evolved. So I guess my response is this. I think in the context of a drug case, officers have to have some room to provide context for why they're seizing what they're seizing. So just to ask a witness, Officer Johnson, did you search this residence? Yes. What did you find? Did you see anything? Yes. Did you find anything of significance? Yes, I found inositol powder. Why was that significant to you? I think that question is appropriate. Otherwise, the jury has no context. Well, but I thought, you know, initially that he, when he testified about what he, when he was testifying as an expert in his knowledge about drug trafficking and he identifies all these items, then he's asked, well, what are these? What do these mean? What's the significance of these? And he says, well, these, this, you put this all together, they're all part of a drug trafficking scheme. Here's what, and here's why. And he's testifying in his role as an expert, not as a precipiate witness who observed something with his eyes. I would argue that the piece of his testimony that was really expert based was the testimony on drug pricing and then distribution quantities. I think that a non-expert can say, I seized this because I've seen another drug cases. I think, and that's really the extent to which he, that's as far as he went. And I think he sees, for example, the, the compound because it's often used in drug cases. I don't think is, is expert testimony, but I think his testimony is that this bears the indicia, these things together, bear the indicia of a heavy drug distribution operation is surely expert testimony. And I think that that is a, a pretty isolated incident. There's one comment that he said, he made these things together or suggest of drug trafficking. I don't think that undermines the fact that he did have lay inadequate foundation. Six pages of testimony was elicited about his background. I think that- Oh, no, no, nobody's doubting that. And I don't think you're, I don't think the defendant challenges his expertise, just says you should have told the court. He may be an expert on that, but that doesn't necessarily, you should mean you should believe him about what happened at Gillomway. Absolutely. Two other quick points though. I think if you set aside his contested entirety, you've got enough for a conviction apart from any, really any reference to reference to Gillomway at all, just the testimony and the evidence presented about Gillomway itself, I think is enough for a conviction in of itself. One final comment. I think if you, the jury received the instruction for expert testimony and for just how to, how to evaluate regular testimony. If you combine those two instructions, they almost mirror 95% of the Ninth Circuit's model instruction for dual role testimony. So ultimately they got the bulk of the instructions. In my view at this point, it's sort of an academic distinction because if they've gotten the substance of the instruction in two instructions, then the fact that they didn't have a specific dual role testimony instruction seems to be of much less importance. You cited the, what is it, the Fifth Circuit and Tarawa? Was that, you said it fits? I'm not familiar, I'm not familiar with the case, Your Honor. I'm sorry. Maybe. I thought you cited as to Tarawa. Tarawa-Mendia, is that it? Yeah. Yes. That's one of ours. Oh, that's one of ours. Okay. Sorry. Anyway, that says it's plain error not to give this instruction. I missed how you said this fits squarely in such a way as to help you. So what Tarawa-Mendia says is it is error not to give the instruction. It's plain error. In that it is error that is plain, but it does not necessarily affect, the analysis in false truth doesn't affect a person's substantial rights, which is ultimately what would lead to reversal. And that's what I'm saying, the distinction there is that. So in other words, you were dealing with Judge Hurwitz insisting you stay with the concession of error. Yes, exactly, exactly. And then you went to the lack of prejudice. Exactly. Okay, got it. But ultimately, I think when you look, consider the jury instructions in light of the Ninth Circuit Pattern Jury Instruction on dual role, ultimately it's no, nearly, it's very similar. And just for your note, it's rule 4.14a is the dual role testimony instruction. Okay. Thank you, counsel. Had a minute for rebuttal. Thank you. So U.S. v. Rivera makes it clear that it is plain error to fail to give that instruction. And the court has clear guidelines on what it's supposed to do. And it's supposed to separate and make it clear for the jury. And just saying, oh, I'm going to switch gears now. The prosecutor said that. No, everybody agrees it's error, but we've got Taralba Mendia, I think I'm saying it correctly, which says it's plain error, but we can still affirm if their prejudice isn't prejudice. Right. And I submit that there is prejudice here, particularly when you combine it with, one of the things they wanted to guard against is that the officers shouldn't be allowed to speculate. And here we have the speculation and we have the loose sort of exaggerations about, yeah, this is what a drug dealer does. And this is, we knew who the drugs were. And so when you combine all of the errors together, including with the 404b, I think it is reversible error. Okay. Thank you. Thank you, counsel. We appreciate the arguments this morning. The matter is submitted at this time.
judges: Fisher, Paez, Hurwitz